RECEIVED
JUL 10 2025
CLERK, U.S. DISTRICT COURT
DULUTH, MINNESOTA

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America ex rel.
Troy K. Scheffler,
          Plaintiff-Relator,

v.

Golden Shovel Agency, LLC,
          Defendant.

**TO BE FILED UNDER SEAL**

**Complaint Under the False Claims Act**

Case No. 25-sc-2824-KMM/LIB

Plaintiff-Relator, complaining of the Defendant, respectfully sets forth and alleges as follows:

### I. Nature of Case

1. This is a false claims act claim. The Qui Tam Plaintiff and Relator, Troy K. Scheffler ("Relator"), alleges that the Defendant fraudulently obtained CARES Act disaster relief by means of fraudulent certifications of eligibility. As set forth in more detail below, Defendant did falsely assert contractors as qualifying employees to fraudulently obtain Paycheck Protection Program relief along with falsely stating rent and utility amounts for reimbursement.

### II.  Parties

2. Defendant Golden Shovel Agency, LLC ("Golden Shovel"), whose owner and manager is Minnesota State Representative Ron Kresha, is a Minnesota business entity which primarily conducts business within the State of Minnesota. Defendant's registered office is located at 43 E Broadway, Little Falls, MN 56345.

3. Relator is an adult male domiciled at 26359 Shandy Trl, Merrifield, MN 56465.

SCANNED
JUL 10 2025
U.S. DISTRICT COURT DULUTH

### III. Compliance with Requirements of Suit

4.  This matter will be filed under seal pursuant to 31 U.S.C. Section 3730(b) and at or about the same time, a copy of the Complaint, any Sealing Order, and Relator's disclosure of evidence will be served on the Department of Justice and the United States Attorney for the District in which this matter has been filed.

5.  Relator will not serve the Complaint or any other papers in this matter until and unless it becomes unsealed. Thus, if the Complaint is served on the Defendant, it means that the matter has been duly unsealed.

### IV. Jurisdiction and Venue

6.  This Court has jurisdiction pursuant to 31 U.S.C. Section 3732(a) which provides that this type of action may be brought in any district where any Defendant resides or transacts business. In this case, the Defendant maintains business activity in Minnesota and is duly authorized to transact business in Minnesota as his business is registered in Minnesota by the hand of the Minnesota Secretary of State.

### V. Background

7.  Throughout most of 2020 and continuing into 2021, the United States was faced with a large-scale outbreak of the virus commonly known as "Coronavirus" and "Covid-19". (the "Coronavirus Epidemic").

8.  In addition to the Coronavirus Epidemic itself, the United States was faced with large scale outbreaks of panic and hysteria as a result of the Coronavirus Epidemic.

9. All of the above has resulted in major economic disruption and as a result, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, commonly known as the "CARES Act".

10. The CARES Act contains a provision which permitted qualifying businesses which were affected by the foregoing disruption to obtain forgivable disaster loans.

11. The CARES Act was subsequently amended to provide for a second round of disaster funding. Significantly, an applicant is ineligible for such funding if its business operations were not significantly affected by the outbreak, in Defendant's instance, they were not as it does its primary business remotely via phone and internet.

12. Defendant also did not qualify for CARES Act relief as it did not have full time or any W2 employees as fraudulently represented.

13. Defendant also did not qualify as it did not have the claimed rent and utility expenses as fraudulently represented.

14. That on or about 04/28/2020, Defendant, through Ron Kresha, did apply for a PPP loan and was approved for said loan in the amount of $154,600 which included Payroll of $123,200, Rent of $16,400, and Utilities of $15,000.

15. The same application claimed that Defendant reported 17 employees.

16. That on 04/28/2020, Defendant did not have any qualifying employees nor did it have rent or utilities which existed to claim.

17. That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

3

18. That the loan was serviced through Pine Country Bank, located in Little Falls, Minnesota.

19. That said loan gained by fraud was forgiven by the United States of America in the final amount of $155,948.

20. That on 03/12/2021, Defendant, by Ron Kresha, did apply and was approved for a PPP loan in the amount of $164,700 which included Payroll of $164,697, an undetermined expense of $2, and Utilities of $1.

21. The same application claimed that Defendant reported 20 employees.

22. That on 03/12/2021, Defendant did not have any qualifying employees nor did it have rent or utilities which existed to claim.

23. That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

24. That the loan was serviced through Pine Country Bank, located in Little Falls, Minnesota.

25. That said loan gained by fraud was forgiven by the United States of America in the final amount of $165,944.

26. That during the time Defendant was applying for said loans, on 11/24/2020, Ron Kresha was deposed in an unrelated lawsuit. (Minn. Dist. Ct. 27-CV-20-2623)

27. During said deposition, Kresha swore under oath to the following answers upon questioning.

28. Q. "And how many employees currently at the company [Golden Shovel]?"
    A. "I have no employees."

4

29. Q. "Do you have any independent contractors working for the company?"

    A. "I do have independent contractors working for the company."

    Q. "How many?"

    A. "Approximately 15."

30. Q. "So what kind of rent has your company [Golden Shovel] been paying you to rent the building over these years?"

    A. "It has been anywhere from zero to $500 a year. It's been in-kind contributions, they keep up the utilities, the utilities are about $50 a month."

31. Q. "We've looked at a few documents here today talking about Ms. Whelan as, you know, the director of strategic marketing or the vice president of marketing or the marketing director or titles like that. Do you remember those titles being thrown around?"

    A. "I do."

    Q. "Is there a particular document that would tell me that there's any particular salary or benefits associated with those titles?

    A. "Not that I can recall. When you're a start-up and you're just getting out there, you try to attribute titles so that you have some recognition with the clients and -- it's a way for a start-up to start to bring credibility before they get their brand awareness. So a lot of times we could create titles and so forth on the fly that would lend credence to how we were going to have conversations with other people."

Q. "And there's nothing about a particular title that guarantees the person carrying that title to any particular compensation; is that true?"

A. "That's correct. A lot of times a title would be attributed because you're talking to somebody in the marketplace that also has a title and you try to match those titles so they both feel like they're on even footing for conversations."

Q. "And furthermore, is there any reason in your mind that an independent contractor working for your company could have a title in the company?"

A. "The only reason we would attribute titles to independent contractors is to show that they're part of the communications and it's one less barrier when they're communicating with us.

Q. "So giving a title to an independent contractor wouldn't make them an employee of your company, in your view, would it?

A. "No. In fact, we do that now, all of our – all the people with us are independent contractors and they have a title that fits their role, so that people understand they're communicating within the confines of our company.

Q. "And even though they're not employees of the company.

A. "That's correct."

32. Q. "Giving an independent contractor an email address does not convert them to an employee in your view, does it?"

A. "No, we give emails out to all of our independent contractors because it's just -- it makes communication easier."

Q. "Same reason you give them titles, too, right?"

A. "Some we give titles. We also give them business cards."

33. That in this sworn deposition, Kresha admits material facts supportive of this instant action: 1. He has no actual employees of Golden Shovel. 2. All people that work for Golden Shovel are contracted. 3. That a regular business practice of Defendant was to fraudulently represent contractors as actual employees by giving them fake titles to defraud other businesses to gain contracts that Golden Shovel otherwise would not have gained.

34. That with regard to this instant action, under application for said PPP money, Golden Shovel certified under penalty of perjury, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the applicant."

35. Golden Shovel did not qualify as its operations were not in fact affected as not only did Golden Shovel not have any employees to be affected, but its contractors worked remotely via internet and telephone as Golden Shovel's main business operations provide online digital marketing services.

36. That throughout the pandemic, Golden Shovel's revenues remained steady if not increased.

37. That the PPP loan applications submitted by Golden Shovel and their accompanying instructions clearly state that independent contractors do not qualify for PPP relief as contractors must obviously apply under their own business.

38.     That Golden Shovel did knowingly and in the most generous light did recklessly submit false claims employee costs, utilities and rent to unlawfully gain the trust of the United States Government to believe that Golden Shovel did qualify for PPP loans and forgiveness which only ultimately unlawfully enriched Golden Shovel and Minnesota State Representative Ron Kresha.

39.     That Golden Shovel did swear under penalty of perjury to follow "Paycheck Protection Program Rules" which are easily obtainable during the application process via the lender, government websites in the application process, and otherwise explained during the application process.

40.     Said instructions clearly state that eligible payroll is for employees, not contractors and that contractors are themselves borrowers. "15. Question: Should payments that an eligible borrower made to an independent contractor or sole proprietor be included in calculations of the eligible borrower's payroll costs? Answer: No. Any amounts that an eligible borrower has paid to an independent contractor or sole proprietor should be excluded from the eligible business's payroll costs, except for fishing boat owners as permitted by PPP interim final rules.19 However, an independent contractor or sole proprietor will itself be eligible for a loan under the PPP, if it satisfies the applicable requirements."

https://home.treasury.gov/system/files/136/FAQ-PPP-for-Borrowers-and-Lenders-Questions-1-72-V13.pdf

41.     That Relator first began to discover the fraud committed by Golden Shovel through the hand of Minnesota Representative Ron Kresha while investigating his

8

fellow confidants State Senator Keri and State Representative Joshua Heintzeman's own fraud schemes by misusing, misrepresenting, and laundering campaign contributions through the Minnesota House Republican Campaign Committee (HRCC) which Joshua Heintzeman chairs; primarily laundering campaign funds as "Legal Fees" to Republican mainstay attorneys such as Rondell Reid LeBeau II and Minnesota State Representative Harry Niska.

42. That during Relator's watchdog investigations of the Heintzeman's which including numerous examples of lying under oath, voter intimidation (Including Police Chiefs), and of course fraud, an individual, Mary Whalen, a former partner of Ron Kresha, approached Relator with regard to Ron Kresha violating Minnesota Campaign Law by falsely claiming an endorsement by the Republican Party of Minnesota. (Minn. Office of Administrative Hearings 65-0320-40209)

43. That Ms. Whalen supplied Relator of the aforementioned Deposition of Ron Kresha.

44. Ms. Mary Whalen through diligent and extensive work, was able to determine the impropriety of the Defendant and Ron Kresha and Realtor and Ms. Whalen (Deserving the most credit in this matter) began diligent efforts to iron out the specifics of this instant fraud and begin a public pressure campaign for Kresha and Golden Shovel to come clean.

45. That during the month Realtor contacted both the Morrison County Sheriff and Little Falls Police Department as the funds were handled by a bank in Little Falls, MN.

46. The Little Falls Police Department via Officer Doroff, took the initial report, sent it to a detective, and that detective following investigation, ultimately informed Realtor that he telephoned the FBI and "left a message on a voicemail and that's all he was going to do"; despite finding the allegations to be credible.

47. Realtor later discovered that Little Falls Police Chief Johnson has ties with Kresha and Realtor now questions if even a phone call was made.

48. That Realtor telephoned Morrison County, much of Kresha's legislative district, and spoke with the City Administrator Matt LeBlanc to see if he could either speak during open forum or be placed on the agenda.

49. LeBlanc stated that he and the County Board are uninterested in the concerns of the community and feel that allowing them to speak results in inconvenient "pontificating".

50. He later informed with a "heads up" via text to the County Board that Realtor had called to speak concerning the fraud, but had been effectively dissuaded.

51. Instead of doing the right thing, Minnesota State Representatives Ron Kresha, Minnesota State Representative Joshua Heintzeman, and Minnesota State Representative Isaac Schultz began considerable efforts to obfuscate the matter and discredit both Realtor and Ms. Whalen.

52. Finally, after Relator spoke at a Basic Political Organizational Unit (BPOU) of the Morrison County Republican Party, public awareness began spreading like wildfire.

53. At said meeting, Rep. Schultz, who ironically is on the Minnesota "Fraud Committee", made expensive effort to lie and obfuscate to the BPOU in an effort to cover the crimes of his compatriot Kresha.

54. That Representative Heintzeman and Senator Keri Heintzeman were behind the scenes directing the strategy to cover for Kresha.

55. That their efforts were ultimately in vain as the Committee was unimpressed with the obvious disingenuous nature of the Representatives.

56. Word, concern, frustration and disgust began spreading concerning the obvious fraud.

57. On 06/25/2025, Action 4 Liberty, a Republican accountability organization contacted Relator with regard to the claims of fraud and Realtor provided them with relevant proofs.

58. On 06/25/2025, Action 4 Liberty published an article with regard to Kresha and the PPP loan fraud. https://www.action4liberty.com/legislator_on_fraud_cmte_presented_evidence_of_ppp_loan_fraud_by_rep_ron_kresha

59. That on 07/06/2025, Realtor received a call from Larry Doose, Chair of the Mille Lacs County BPOU who asked Realtor to speak at their 07/07/2025 meeting.

60. Prior to the meeting, on 07/05/2025, and failing to appear upon request by both Morrison County and Mille Lacs County BPOU's, Kresha released a bizarre and panicked statement online asserting the allegations of fraud were "politically

motivated misinformation to spread lies and tarnish individual character to spread discord and division."

61. He then continued to state in addressing the "allegations of fraud" by plodding through with an inordinately long statement about his legislative history, nursing homes, and "keyboard warriors".

62. Kresha continued by falsely asserting, "I continue to be attacked personally by individuals [Relator] who spend their time filing frivolous lawsuits, speaking lies to gain monetary gain and will never spend one once of energy to make our communities safer, stronger, and more vibrant."

63. At no point in Kresha's unhinged meandering release does spend a scintilla of effort actually addressing the fraud claim other than stating, "Again, the recent claims of fraud are unequivocally false."

64. At said Mille Lacs County BPOU meeting, Realtor shared his experiences and proofs of the Golden Shovel fraud.

65. Following the presentation, Representative Isaac Schultz again went on a long diatribe of slander against Relator, largely parroting Kresha's released statement, to discount the allegations of fraud. He fell flat in his defamatory efforts.

66. Many members of the BPOU then began demanding Schultz open and investigation with the Fraud Committee and initiate an ethics complaint.

67. After Schultz lied and again obfuscated government process, the members reached a point of frustration with Schultz that they proclaimed they would report the matter to authorities themselves.

68. That after the meeting, Schultz contacted Kresha and informed him of the disaster and informed him of the growing hostility against not only Kresha, but Schultz as a disingenuous apologist.

69. Upon realizing that pressure was too great and momentum too much to reverse course with their patent and shameless lying, shortly after the meeting, Kresha telephoned Larry Doose and confessed to misrepresenting contractors as regular employees on his PPP application.

70. That the actions of Golden Shovel and Ron Kresha are particularly egregious to the common man, taxpayer, and citizen of the United States of America as Kresha is a multimillionaire and holds a position of trust as State Representative.

## Claims

### VI. Count 1- Violation of the False Claims Act

71. Realtor restates, realleges, and reincorporates the above stated facts.

72. The False Claims Act imposes liability on a person or entity who "knowingly makes, uses, or causes to made or used, a false record or statement material to a false or fraudulent claim" (31 U.S.C. Section 3729(a)(1)(B))

73. The Courts have held that this can include false statements regarding eligibility to participate in a program. See United States ex rel. Kirk v Schindler Elevator Corp., 601 F.3d 94, 116 (2d Cir. 2010).

74. That on or about 04/28/2020, Defendant, through Ron Kresha, did apply for a PPP loan and was approved for said loan in the amount of $154,600 which included Payroll of $123,200, Rent of $16,400, and Utilities of $15,000.

75. The same application claimed that Defendant reported 17 employees.

76. That on 04/28/2020, Defendant did not have any qualifying employees nor did it have rent or utilities which existed to claim.

77. That Golden Shovel did not generally qualify for the PPP program as its operations were not directly affected by the pandemic shut downs as it and its contractors operated remotely and continued to do business.

78. That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

79. That the United States Government did rely on Defendant's knowing or reckless false statements to forgive the final amount of $155,948, which Defendant was not entitled, at the expense of the United States taxpayers.

80. Thus, the Defendant's certifications of eligibility violated the False Claims Act because they were false and required for eligibility for PPP relief.

81. Defendant is liable for the amount of $155,948 for this claim and Realtor seeks judgment for triple damages and civil penalties set forth in 31 U.S.C. Section 3729 amounting to $467,844.

### VII. Count 2- Violation of the False Claims Act

82. Realtor restates, realleges, and reincorporates the above stated facts.

83. The False Claims Act imposes liability on a person or entity who "knowingly makes, uses, or causes to made or used, a false record or statement material to a false or fraudulent claim" (31 U.S.C. Section 3729(a)(1)(B))

84.  The Courts have held that this can include false statements regarding eligibility to participate in a program. See *United States ex rel. Kirk v Schindler Elevator Corp.*, 601 F.3d 94, 116 (2d Cir. 2010).

85.  That on 03/12/2021, Defendant, by Ron Kresha, did apply and was approved for a PPP loan in the amount of $164,700 which included Payroll of $164,697, an undetermined expense of $2, and Utilities of $1.

86.  The same application claimed that Defendant reported 20 employees.

87.  That on 03/12/2021, Defendant did not have any qualifying employees nor did it have rent or utilities which existed to claim.

88.  That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

89.  That Golden Shovel did not generally qualify for the PPP program as its operations were not directly affected by the pandemic shut downs as it and its contractors operated remotely and continued to do business.

90.  That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

91.  That the United States Government did rely on Defendant's knowing or reckless false statements to forgive the final amount of $165,944, which Defendant was not entitled, at the expense of the United States taxpayers.

92.  Thus, the Defendant's certifications of eligibility violated the False Claims Act because they were false and required for eligibility for PPP relief.

93. Defendant is liable for the amount of $165,944 for this claim and Realtor seeks judgment for triple damages and civil penalties set forth in 31 U.S.C. Section 3729 amounting to $497,832.

## WHEREFORE PLAINTIFF/RELATOR PRAYS FOR THE FOLLOWING RELIEF:

- On behalf of the government, Relator is seeking entry of judgment against the Defendant in favor of the United States of America for triple damages and civil penalties set forth in 31 U.S.C. Section 3729 in the amount of $965,676;

- Additional amounts related to processing fees and potential interest in respect to the loan;

- Attorney fees and costs;

- An appropriate qui tam award;

- All other legal, equitable, or declaratory relief against the defendant, jointly and severally, appropriate under the circumstances.

## VERIFICATION

Having reviewed the above affidavit, Complainant Troy K. Scheffler affirms under penalty of law that all statements above, excluding those made on information and belief, are true to the best of Complainant's present knowledge.

Date: 07-10-2025

Troy K. Scheffler
26359 Shandy Trl.
Merrifield, MN 56465
763-225-7702