UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No.     25-cv-02824-KMM-LIB

| | |
|---|---|
| United States of America ex rel. Troy K. Scheffler, | |
| Plaintiffs, | |
| v. | **AMENDED COMPLAINT** |
| Golden Shovel Agency, LLC, | |
| Defendant. | |

Plaintiff-Relator, by and through his undersigned counsel, states and alleges as follows:

### I. Nature of Case

1. This is a false claims act claim. The Qui Tam Plaintiff and Relator, Troy K. Scheffler ("Relator"), alleges that the Defendant fraudulently obtained CARES Act disaster relief by means of fraudulent certifications of eligibility. As set forth in more detail below, Defendant did falsely assert contractors as qualifying employees to fraudulently obtain Paycheck Protection Program relief along with falsely stating rent and utility amounts for reimbursement.

### II.  Parties

2. Defendant Golden Shovel Agency, LLC ("Golden Shovel"), whose owner and manager is Minnesota State Representative Ron Kresha, is a Minnesota business entity

which primarily conducts business within the State of Minnesota. Defendant's registered office is located at 43 E Broadway, Little Falls, MN 56345.

3. Relator is an adult male domiciled at 26359 Shandy Trl, Merrifield, MN 56465.

### III. Compliance with Requirements of Suit

4. The initial complaint was filed under seal and unsealed. This amended complaint provides edits to that complaint with the assistance of counsel and does not substantively change the nature of the allegations and claims.

### IV.     Jurisdiction and Venue

6. This Court has jurisdiction pursuant to 31 U.S.C. Section 3732(a) which provides that this type of action may be brought in any district where any Defendant resides or transacts business.  In this case, the Defendant maintains business activity in Minnesota and is duly authorized to transact business in Minnesota as his business is registered in Minnesota by the hand of the Minnesota Secretary of State.

### V.     Background

7. Throughout most of 2020 and continuing into 2021, the United States was faced with a large-scale outbreak of the virus commonly known as "Coronavirus" and "Covid-19". (the "Coronavirus Epidemic").

8. All of the above has resulted in major economic disruption and as a result, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, commonly known as the "CARES Act".

10. The CARES Act contains a provision which permitted qualifying businesses which were affected by the foregoing disruption to obtain forgivable disaster loans.

2

11.     The CARES Act was subsequently amended to provide for a second round of disaster funding.  Significantly, an applicant is ineligible for such funding if its business operations were not significantly affected by the outbreak, in Defendant's instance, they were not as it does its primary business remotely via phone and internet.

12.     Defendant also did not qualify for CARES Act relief as it did not have full time or any W2 employees as fraudulently represented.

13.     Defendant also did not qualify as it did not have the claimed rent and utility expenses as fraudulently represented.

14.     That on or about 04/28/2020, Defendant, through Ron Kresha, did apply for a PPP loan and was approved for said loan in the amount of $154,600 which included Payroll of $123,200, Rent of $16,400, and Utilities of $15,000.

15.     The same application claimed that Defendant reported 17 employees.

16.     That on 04/28/2020, Defendant did not have any qualifying employees nor did it have rent or utilities which existed to claim.

17.     That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

18.     That the loan was serviced through Pine Country Bank, located in Little Falls, Minnesota.

19.     That said loan gained by fraud was forgiven by the United States of America in the final amount of $155,948.

20. That on 03/12/2021, Defendant, by Ron Kresha, did apply and was approved for a PPP loan in the amount of $164,700 which included Payroll of $164,697, an undetermined expense of $2, and Utilities of $1.

21. The same application claimed that Defendant reported 20 employees.

22. That on 03/12/2021, Defendant did not have any qualifying employees nor did it have rent or utilities which existed to claim.

23. That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

24. That the loan was serviced through Pine Country Bank, located in Little Falls, Minnesota.

25. That said loan gained by fraud was forgiven by the United States of America in the final amount of $165,944.

26. That during the time Defendant was applying for said loans, on 11/24/2020, Ron Kresha was deposed in an unrelated lawsuit. (Minn. Dist. Ct. 27-CV-20-2623)

27. During said deposition, Kresha swore under oath to the following answers upon questioning.

28. Q. "And how many employees currently at the company [Golden Shovel]?"

    A. "I have no employees."

29. Q. "Do you have any independent contractors working for the company?"

    A. "I do have independent contractors working for the company."

    Q. "How many?"

    A. "Approximately 15."

4

30. Q. "So what kind of rent has your company [Golden Shovel] been paying you to rent the building over these years?"

A. "It has been anywhere from zero to $500 a year. It's been in-kind contributions, they keep up the utilities, the utilities are about $50 a month."

31. Q. "We've looked at a few documents here today talking about Ms. Whelan as, you know, the director of strategic marketing or the vice president of marketing or the marketing director or titles like that. Do you remember those titles being thrown around?"

A. "I do."

Q. "Is there a particular document that would tell me that there's any particular salary or benefits associated with those titles?

A. "Not that I can recall. When you're a start-up and you're just getting out there, you try to attribute titles so that you have some recognition with the clients and -- it's a way for a start-up to start to bring credibility before they get their brand awareness. So a lot of times we could create titles and so forth on the fly that would lend credence to how we were going to have conversations with other people."

Q. "And there's nothing about a particular title that guarantees the person carrying that title to any particular compensation; is that true?"

A. "That's correct. A lot of times a title would be attributed because you're talking to somebody in the marketplace that also has a title and you try to match those titles so they both feel like they're on even footing for conversations."

Q. "And furthermore, is there any reason in your mind that an independent contractor working for your company could have a title in the company?"

A. "The only reason we would attribute titles to independent contractors is to show that they're part of the communications and it's one less barrier when they're communicating with us.

Q. "So giving a title to an independent contractor wouldn't make them an employee of your company, in your view, would it?

A. "No. In fact, we do that now, all of our – all the people with us are independent contractors and they have a title that fits their role, so that people understand they're communicating within the confines of our company.

Q. "And even though they're not employees of the company.

A. "That's correct."

32. Q. "Giving an independent contractor an email address does not convert them to an employee in your view, does it?"

A. "No, we give emails out to all of our independent contractors because it's just -- it makes communication easier."

Q. "Same reason you give them titles, too, right?"

A. "Some we give titles. We also give them business cards."

33. That in this sworn deposition, Kresha admits material facts supportive of this instant action: 1. He has no actual employees of Golden Shovel. 2. All people that work for Golden Shovel are contracted. 3. That a regular business practice of Defendant was to fraudulently represent contractors as actual employees by giving them fake titles to

6

defraud other businesses to gain contracts that Golden Shovel otherwise would not have gained.

34. That with regard to this instant action, under application for said PPP money, Golden Shovel certified under penalty of perjury, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the applicant."

35. Golden Shovel did not qualify as its operations were not in fact affected as not only did Golden Shovel not have any employees to be affected, but its contractors worked remotely via internet and telephone as Golden Shovel's main business operations provide online digital marketing services.

36. That throughout the pandemic, Golden Shovel's revenues remained steady if not increased.

37. That the PPP loan applications submitted by Golden Shovel and their accompanying instructions clearly state that independent contractors do not qualify for PPP relief as contractors must obviously apply under their own business.

38. That Golden Shovel did knowingly and in the most generous light did recklessly submit false claims employee costs, utilities and rent to unlawfully gain the trust of the United States Government to believe that Golden Shovel did qualify for PPP loans and forgiveness which only ultimately unlawfully enriched Golden Shovel and Minnesota State Representative Ron Kresha.

39. That Golden Shovel did swear under penalty of perjury to follow "Paycheck Protection Program Rules" which are easily obtainable during the application process via

the lender, government websites in the application process, and otherwise explained during the application process.

40. Said instructions clearly state that eligible payroll is for employees, not contractors and that contractors are themselves borrowers. "15. Question: Should payments that an eligible borrower made to an independent contractor or sole proprietor be included in calculations of the eligible borrower's payroll costs?

Answer: No. Any amounts that an eligible borrower has paid to an independent contractor or sole proprietor should be excluded from the eligible business's payroll costs, except for fishing boat owners as permitted by PPP interim final rules.19 However, an independent contractor or sole proprietor will itself be eligible for a loan under the PPP, if it satisfies the applicable requirements."

https://home.treasury.gov/system/files/136/FAQ-PPP-for-Borrowers-and-Lenders-Questions-1-72-V13.pdf

## Claims

### VI. Count 1- Violation of the False Claims Act

41. Realtor restates, realleges, and reincorporates the above stated facts.

42. The False Claims Act imposes liability on a person or entity who "knowingly makes, uses, or causes to made or used, a false record or statement material to a false or fraudulent claim" (31 U.S.C. Section 3729(a)(1)(B))

43. The Courts have held that this can include false statements regarding eligibility to participate in a program. See United States ex rel. Kirk v Schindler Elevator Corp., 601 F.3d 94, 116 (2d Cir. 2010).

44. That on or about 04/28/2020, Defendant, through Ron Kresha, did apply for a PPP loan and was approved for said loan in the amount of $154,600 which included Payroll of $123,200, Rent of $16,400, and Utilities of $15,000.

45. The same application claimed that Defendant reported 17 employees.

46. That on 04/28/2020, Defendant did not have any qualifying employees nor did it have rent or utilities which existed to claim.

47. That Golden Shovel did not generally qualify for the PPP program as its operations were not directly affected by the pandemic shut downs as it and its contractors operated remotely and continued to do business.

48. That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

49. That the United States Government did rely on Defendant's knowing or reckless false statements to forgive the final amount of $155,948, which Defendant was not entitled, at the expense of the United States taxpayers.

50. Thus, the Defendant's certifications of eligibility violated the False Claims Act because they were false and required for eligibility for PPP relief.

51. Defendant is liable for the amount of $155,948 for this claim and Relator seeks judgment for triple damages and civil penalties set forth in 31 U.S.C. Section 3729 amounting to $467,844.

### VII.  Count 2- Violation of the False Claims Act

52. Realtor restates, realleges, and reincorporates the above stated allegations as if fully set forth herein

53. The False Claims Act imposes liability on a person or entity who "knowingly makes, uses, or causes to made or used, a false record or statement material to a false or fraudulent claim" (31 U.S.C. Section 3729(a)(1)(B)).

54. Courts have held that this can include false statements regarding eligibility to participate in a program. See *United States ex rel. Kirk v Schindler Elevator Corp.*, 601 F.3d 94, 116 (2d Cir. 2010).

55. That on 03/12/2021, Defendant, by Ron Kresha, did apply and was approved for a PPP loan in the amount of $164,700 which included Payroll of $164,697, an undetermined expense of $2, and Utilities of $1.

56. The same application claimed that Defendant reported 20 employees.

57. That on 03/12/2021, Defendant did not have any qualifying employees nor did it have rent or utilities which existed to claim.

58. That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

59. That Golden Shovel did not generally qualify for the PPP program as its operations were not directly affected by the pandemic shut downs as it and its contractors operated remotely and continued to do business.

60. That Defendant did fraudulently claim said amounts to unlawfully benefit from the United States and its taxpayers.

61. That the United States Government did rely on Defendant's knowing or reckless false statements to forgive the final amount of $165,944, which Defendant was not entitled, at the expense of the United States taxpayers.

62. Thus, the Defendant's certifications of eligibility violated the False Claims Act because they were false and required for eligibility for PPP relief.

63. Defendant is liable for the amount of $165,944 for this claim and Realtor seeks judgment for treble damages and civil penalties set forth in 31 U.S.C. Section 3729 amounting to $497,832.

**WHEREFORE PLAINTIFF/RELATOR PRAYS FOR THE FOLLOWING RELIEF:**

1) On behalf of the government, Relator is seeking entry of judgment against the Defendant in favor of the United States of America for treble damages and civil penalties set forth in 31 U.S.C. Section 3729 in the amount of $965,676;

2) Additional amounts related to processing fees and potential interest in respect to the loan;

3) An award pf Attorneys fees and costs;

4) An appropriate qui tam award;

5) All other legal relief appropriate under the circumstances.

Dated:   October 21, 2025                 /e/ Nathan M. Hansen
                                          Nathan M. Hansen
                                          *Attorney for Plaintiff*
                                          P.O. Box 575
                                          Willernie, MN 55090
                                          651-704-9600
                                          MN Attorney Reg. No. 0328017
                                          Nathan@hansenlawoffice.com

11

## VERIFICATION

The undersigned declares under penalty of perjury that the contents of foregoing Amended Complaint are true and correct to the best of his knowledge.

Dated: 10-21-2025

Troy K. Scheffler, Relator