# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA
Ex rel. Troy K. Scheffler,

                             Plaintiff,

vs.

GOLDEN SHOVEL AGENCY, LLC,

                            Defendant.

Court File No.: 0:25−cv−02824−KMM−LIB

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S RULE 12(b)(6) MOTION
TO DISMISS AMENDED COMPLAINT**

Golden Shovel Agency, LLC, Defendant in the above-entitled action, by and through undersigned counsel, hereby files this Memorandum in Support of Motion to Dismiss Amended Complaint. On the basis of the arguments herein, Defendant urges the Court to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(6), and with prejudice.

## **INTRODUCTION**

On July 10, 2025, Troy K. Scheffler filed a complaint against Defendant Golden Shovel Agency, LLC, under seal. Dkt.1. That complaint asserted two violations of the False Claims Act by the Defendant, neither of which are true, and asserted Scheffler is the Relator in this qui tam action. *See* Dkt. 1, ¶ 71 – 81 (Count 1); *id.* ¶ 82 – 93 (Count 2). The False Claims Act ("FCA"), codified at 31 U.S.C. 3729, *et. seq.,* ostensibly permits a private citizen to bring a civil action "for the United States Government" for a violation of 18 U.S.C. 3729. *See* 31 U.S.C. 3730(b)(1). Scheffler filed this action pro se. On

information and belief, Scheffler is not a duly licensed attorney in any state or federal court in the United States. Nevertheless, pursuant to the standard procedure following filing of a False Claims Act claim, this matter was sealed upon filing and notice provided to the United States to allow the United States an opportunity to intervene.

On October 1, 2025, the United States declined to intervene, noting all it needed to: the blatant deficiency in Scheffler filing a qui tam action pro se. *See* Dkt. 3 ("Under established False Claims Act precedent, including from the Eighth Circuit, a qui tam relator cannot proceed pro se."). The United States then requested the Court unseal the complaint and related documents and all future filings in this action. *See id.*

On October 3, 2025, the Court unsealed this action and all future filings. Dkt. 4.

On October 21, 2025, Scheffler—now having secured counsel—filed an amended complaint attempting to cure defects in the initial complaint, including that the initial complaint was filed pro se. *See generally* Dkt. 7; Dkt. 9 (amended complaint). In his amended complaint, though, Scheffler also deleted 28 paragraphs he swore to be true in his initial complaint that are relevant to this motion. *See* Dkt. 1, ¶ 41 – 69.

Given Defendant received the summons on the amended complaint on October 22, 2025, he timely submits this motion to dismiss this action.

## SUMMARY OF MOTION

Defendant makes two arguments because there are two separate grounds for dismissal with prejudice.

First, the Court must dismiss this action because it was never properly put before the Court. Scheffler cannot bring a qui tam action on behalf of the United States pro se, which the United States noted in declining to intervene. The existence of this case is the product of Scheffler's unauthorized practice of the law. Hiring a lawyer to *amend* the complaint does not remedy the fact that the complaint being *amended* was never properly put before the Court. If not dismissed, any outcome will be tainted by Scheffler's initial illegal filing. Therefore, the Court should dismiss.

Second, dismissal is mandated under 31 U.S.C. § 3730(e)(4)(A)(iii), which states in relevant part:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
> ***
> (iii)
> from the news media,
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A)(iii).

The Government does not appear to oppose dismissal of this action. And even though his lawyer deleted 28 of the sworn statements from Scheffler's initial complaint when re-filing the amended complaint, those statements are still in the court file and relevant to this motion. *See* Dkt. 1, ¶ 41 – 69. Before those paragraphs were deleted,

Scheffler swore to this Court that "On 06/25/2025, Action 4 Liberty published an article with regard to Kresha and the PPP loan fraud[,]" which is substantially the same allegation as alleged in this action, granted the allegation is false. *Id.* at ¶ 58. That Action 4 Liberty article was not the only public disclosure of this information, but it was clearly a disclosure by a news media organization. The amended complaint also deleted a link to the news article, which Kresha had chosen to include in his initial filing. *See id.* at ¶ 58.

On the basis of that news article alone, 31 U.S.C. § 3730(e)(4)(A)(iii) mandates dismissal unless Scheffler is an "original source" of the information. Comparing the admissions in his initial complaint to the definition of "an original source of the information" under 31 U.S.C. § 3730(e)(4)(B), it is clear Scheffler has admitted that he is *not* an original source of the information. Therefore, the Court "shall dismiss" the action.

Defendant argues dismissal with prejudice is warranted because even in a light most favorable to Scheffler, he is *not* a legitimate Relator in a qui tam action like this, even if it *were* a legitimate action, because he is not an "original source of the information" as defined by 31 U.S.C. § 3730(e)(4)(B). No number of additional amendments or re-filings could fix that.

## FACTS

On July 10, 2025, Troy K. Scheffler filed a complaint against Defendant Golden Shovel Agency, LLC, under seal. Dkt.1 On information and belief, Troy K. Scheffler is not an attorney. He filed this qui tam action on behalf of the United States, pro se. This is also the belief of the United States. *See* Dkt. 3 (declining to intervene and citing to case law applicable to illegal court filings by a non-attorney/pro se litigant).

Scheffler's contentions of an FCA violation are unequivocally and demonstrably false. But he nonetheless argues, basically, that someone else gave him a deposition transcript from an unrelated civil case wherein Mr. Kresha allegedly stated the Defendant company had independent contractors, not employees. Because of this, Scheffler asserts a violation of the FCA because the Defendant received PPP funding during the pandemic. Scheffler agrees any loan was secured with oversight from a bank. Dkt. 1, ¶ 45.

On October 21, 2025, after the United States declined to intervene and after this action was unsealed, Scheffler—now with counsel—filed an amended complaint. *See* Dkt. 9. That amended complaint attempted to cure defects in Scheffler's initial complaint.

In section III, ¶ 4 of the amended complaint, titled "Compliance with Requirements of Suit," Scheffler now asserts:

> The initial complaint was filed under seal and unsealed. This amended complaint provides edits to that complaint with the assistance of counsel **and does not substantively change the nature of the allegations and claims**.

Dkt. 9, ¶ 4 (emphasis added).

Despite this assertion, the amended complaint *does* substantively change the nature of the allegations. It deleted 28 largely substantive paragraphs from the initial complaint and, collectively, those 28 paragraphs mandate dismissal under 31 U.S.C. § 3730(e)(4)(A)(iii). In those 28 deleted paragraphs, Scheffler swore that substantially the same allegations as alleged in this action were publicly disclosed from the news media. He also established he would not qualify as an "original source" as contemplated by 31 U.S.C. § 3730(e)(4)(B). This is because (i) he did not voluntarily disclose anything to the Government before publicly disclosing the information, and (ii) he does not have information that was independent of and materially added to the publicly disclosed allegations, and even if he did, he never voluntarily provided the information to the Government before filing an action under this section. *See* 31 U.S.C. § 3730(e)(4)(B).

From ¶ 7 to ¶ 40 of the "background" section in the amended complaint, Scheffler appears to have copied/pasted verbatim the same paragraphs in his initial complaint. *Compare* Dkt. 1, ¶ 7 to ¶ 40 *with* Dkt. 9, ¶ 7 to ¶ 40. The amended complaint, however, deleted from the initial complaint ¶¶ 41 to 69.

Regardless of whether Scheffler is an attorney, he signed a personal verification in the initial complaint that stated:

> Having reviewed the above affidavit, Complainant Troy K. Scheffler affirms under penalty of law that all statements above, excluding those made on information and belief, are true to the best of Complainant's present knowledge.

Dkt. 1, pg. 16. That verification obviously applied to ¶¶ 41 – 69.

Among those under-oath provisions, Scheffler swore: "That during Relator's watchdog investigations . . . an individual, Mary Whalen . . . approached Relator with regard to Ron Kresha[.]" Dkt. 1, ¶ 42. It was "Ms. Whalen [who] supplied Relator of the aforementioned Deposition of Ron Kresha." *Id.* at ¶ 43. It was Mary Whalen's "diligent and extensive work" that led to Scheffler's conclusion that there was wrongdoing, and according to Scheffler, Whalen "deserv[es] the most credit in this matter[.]" *Id.* at ¶ 44.

After Scheffler began "diligent efforts to iron out" what he incorrectly believed to be wrongdoing, what the amended complaint omits is that they "beg[an] a public pressure campaign for Kresha and Golden Shovel to come clean." *Id.* at ¶ 44. Scheffler averred that part of this public pressure campaign involved telephoning "Morrison County, much of Kresha's legislative district," and also soliciting the City Administrator to "speak during open forum or be placed on the agenda." *Id.* at ¶ 48. Scheffler admits he spoke at a Basic Political Organizational Unit (BPOU) of the Morrison County Republican Party, after which, "public awareness began spreading like wildfire." *Id.* at ¶ 52; *see Id.* at ¶ 56 ("Word, concern, frustration and disgust began spreading . . .").

Then, what the amended complaint omitted is that Scheffler *knew* the media became involved: "On 06/25/2025, Action 4 Liberty, a Republican accountability organization contacted Relator with regard to the claims of fraud and Realtor [sic] provided them with relevant proofs." *Id.* at ¶ 57. "On 06/25/2025, Action 4 Liberty published an article with regard to Kresha and the PPP loan fraud." *Id.* at ¶ 58. Scheffler included a link to that article. *See id.* He noted there was an additional request to speak publicly, and that Mr. Kresha issued an online statement claiming, accurately, that the

allegations were "politically motivated misinformation to spread lies and tarnish individual character to spread discord and division." *Id.* at ¶ 60. Scheffler then acknowledges providing another non-Government agency—the Mille Lacs County BPOU—with "relevant proofs of the Golden Shovel fraud." *Id.* at ¶ 64.

## <u>LEGAL STANDARD</u>

Scheffler has filed an action under the FCA, which prohibits any person from "knowingly present[ing], or caus[ing] to be presented, [to the United States Government] a false or fraudulent claim for payment." 31 U.S.C. § 3729(a)(1)(A). As is, a private individual, known as a relator, may bring a civil *qui tam* action on behalf of the government and share in the monetary recovery, *id.* § 3730(b)(1), (d). After filing a qui tam complaint, the relator must serve a copy of the complaint on the government, and the government may elect to intervene and litigate the action. *Id.* § 3730(b)(2), (4). If the government declines to intervene, the relator shall have the right to proceed. *Id.*

As with any complaint, though, it must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Labels, conclusions, or a formulaic recitation of elements do not suffice. *Twombly*, 550 U.S. at 555. Rule 12(b)(6) dismissals serve critical policy interests: protecting defendants from reputational harm and the heavy cost of discovery in meritless lawsuits. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) (Rule 12(b)(6) "streamlines litigation" by weeding out meritless claims early); *Twombly*, 550 U.S. at 559 (Rule 12(b)(6) guards against "the threat of discovery expense" forcing settlement of meritless suits).

<u>**ARGUMENT**</u>

**I. THE COURT MUST DISMISS THIS ACTION BECAUSE SCHEFFLER'S INITIAL COMPLAINT IS A NULLITY GIVEN IT IS THE PRODUCT OF SCHEFFLER'S UNAUTHORIZED PRACTICE OF THE LAW.**

The United States declined to intervene, recognizing the action was improperly before the Court from the moment it was filed:

> Under established False Claims Act precedent, including from the Eighth Circuit, a qui tam relator cannot proceed pro se. *See e.g., United State v. Onan,* 190 F.2d 1, 6 – 7 (8th Cir. 1951) ("We do not think that Congress could have intended to authorize a lay[person] to carry on such suit as attorney for the United States but must have had in mind that such a suit would be carried on in accordance with the established procedure which requires that only one licensed to practice law may conduct proceedings in court for anyone other than himself."); *United States ex rel. Davis v. Hennepin County,* 2016 WL 10747256, at *2 (D. Minn. July 8, 2016 (collecting cases); *United State ex re. Sammarco v. Ludeman,* 2010 WL 681454, at *11 (D. Minn. Feb. 25, 2010) (same).

Dkt. 3.

"[C]ourts have uniformly held that non-lawyers may not litigate qui tam actions on behalf of the United States." *Davis.*, 2016 WL 10747256, at *2 (citing *Gunn v. Credit Suisse Grp. AG*, No. 13-4738, 2015 WL 1787011, at *2 (3d Cir. Apr. 21, 2015); *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008); *Timson v. Sampson*, 518 F.3d 870, 873–74 (11th Cir. 2008) (per curiam); *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1126–27 (9th Cir. 2007); *United States ex rel. Lu v. Ou*, 368 F.3d 773, 775–76 (7th Cir. 2004); *Onan*, 190 F.2d at 6. This action is the product of Scheffler's unauthorized practice of the law.

That Scheffler *now* has an attorney who filed an amended complaint, does not legitimize Scheffler's initial illegitimate filings because Scheffler's initial complaint is a nullity. He cannot amend a nullity.

In *Jones,* the Eighth Circuit affirmed a district court's dismissal of an action where a non-attorney administrator brought an action on behalf of an estate without legal representation. *See Jones ex rel. Jones v. Corr. Med. Services, Inc.*, 401 F.3d 950, 952 (8th Cir. 2005). Jones sought leave to amend his complaint and the Eighth Circuit affirmed the district court's rejection of that request, finding that the initial complaint was a "nullity." *See id.* The Eighth Circuit "adopt[ed] the reasoning" that "[b]ecause the original complaint, as a nullity never existed, . . . an amended complaint cannot relate back to something that never existed, nor can a nonexistent complaint be corrected." *Id.* (quotation omitted). The Eighth Circuit reiterated that "because professional competence and professional responsibility are the sine qua non of federal litigation and effective judicial response, the defect cannot be amended." *Id.* (quoting *C.E. Pope Equity Trust v. United States,* 818 F.2d 696, 698 (9th Cir. 1987) (affirming dismissal without prejudice where party improperly filed complaint pro se).

Scheffler "may not engage in the practice of law on behalf of others." *Jones,* 401 F.3d 950 (citing *Ackra Direct Mktg. Corp. v. Fingerhut Corp.,* 86 F.3d 852, 857 (8th Cir. 1996); *Knoefler v. United Bank of Bismarck,* 20 F.3d 347, 348 (8th Cir. 1994); *United States v. Van Stelton,* 988 F.2d 70, 70 (8th Cir. 1993). The action must be dismissed, .[1]

---

[1] Even if Scheffler would be permitted to amend the legal nullity, he is still not exempt from the filing requirements under 31 U.S.C. 3730(b)(2)-(5). Scheffler should have

## II. THE COURT MUST ALSO DISMISS THIS ACTION PURSUANT TO 31 U.S.C. § 3730(e)(4)(A)(iii).

31 U.S.C. § 3730(e)(4)(A)(iii) states:

(A) The court shall dismiss an action or claim under [the FCA], unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A)(iii).[2]

The United States Supreme Court has stated that the "news media" language referenced in Category (iii) has a "broader sweep" than (i) or (ii). *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 290 (2010). "The court included this observation to show that the False Claims Act's news-media category included more than just federally funded or 'private outlets [that] have a national focus.'"

---

refiled the amended complaint pursuant to the requirements of 31 U.S.C. 3730(b). That complaint should have been re-filed under seal to provide the United States with the appropriate notice and opportunity to intervene. The United States' prior declination was based a blatant legal deficiency, and it did not need to reach a determination that the case was meritless. If this action was properly filed under 31 U.S.C. 3730(b), the United States may have made a substantive determination as to the merits and decided to intervene. Frankly, it may have decided to "dismiss the action notwithstanding the objections of the person initiating the action[.]" 31 U.S.C. 3730(c)(2A).

[2] The Government does not appear to oppose dismissal of this action. *See* Dkt. 3 (declining to intervene and noting a blatant deficiency in the pleadings).

*United States ex rel. Louderback v. Sunovion Pharmaceuticals, Inc.*, 703 F. Supp. 3d 961, 971 (D. Minn. 2023) (quoting *Graham Cnty. Soil*, 559 U.S. at 290).

In *Kraxberger*, the Eighth Circuit Court of Appeals applied the public-disclosure bar's "news media" category. *U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1077 (8th Cir. 2014). There, the relator, Kraxberger, claimed that the defendant, Kansas City Power and Light Co., "fraudulently induced the General Services Administration ['GSA'] to install an all-electric heating-and-cooling system" in a federal building. *Id.* at 1077. Kraxberger alleged that Kansas City Power's project bid assumed a 7% future rate increase. *Id.* at 1078. Kansas City Power knew this assumption was false, Kraxberger alleged, because the month before submitting the bid it had proposed an 11.5% future rate increase to its regulator, the Missouri Public Service Commission. *Id.* Kansas City Power's support of the 11.5% rate increase was the subject of hearing testimony in 2006 available through the Commission's website. *Id.* After GSA accepted Kansas City Power's bid, the Commission refused to except the project from the 11.5% increase. *Id.* At a later hearing in 2008, a Kansas City Power manager testified that the GSA's acceptance of the bid was based on the 7% rate in the bid. *Id.* This testimony too was available on the Commission's website. *Id.* Kraxberger filed the case in 2011. *Id.*

The Eighth Circuit concluded that "[t]he 2006 and 2008 hearing testimony, publicly available on the website of the [Commission], qualify as disclosure through the news media." *Id.* at 1079; *see Louderback*, 703 F. Supp. 3d at 971–72 (discussing *Kraxberger* in the context of a rule 12(b)(6) motion to dismiss).

In his initial complaint, Scheffler swore that substantially the same allegations as alleged in this action were publicly disclosed from at least one news media source: "On 06/25/2025, Action 4 Liberty published an article with regard to Kresha and the PPP loan fraud." *Id.* at ¶ 58. Scheffler provided a link to that public and published news media article. *See* 5 U.S.C. § 552 (defining "a representative of the news media" as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"). "Numerous courts have held . . . information disclosed on a readily accessible, publicly available website generally qualifies as "news media" for purposes of the public-disclosure bar regardless of whether the website belongs to a traditional news-gathering or comparable organization." *Louderback*, 703 F. Supp. 3d at 972. Even if Action 4 Liberty is not a traditional or long-existing news source, it still functioned as a news organization by virtue of its actions. *See id.* at 975.

In addition to the disclosures by Action 4 Liberty, though, Scheffler also concedes there were numerous other disclosures, including that he engaged in "public pressure campaign," Dkt. 1, at ¶ 44, which involved online and in-person communications, including speaking publicly at the BPOU of the Morrison County Republican Party, which he claims triggered public awareness to spread "like wildfire," *id.* at ¶ 52.

Collectively, the actions fall within the "news media" category of the False Claims Act's public-disclosure bar. This action, therefore, must be dismissed unless Scheffler is the "original source of the information." He is not.

For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or [ii] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(B).

By Scheffler's sworn admissions in his initial complaint, he is not an "original source" as the statute contemplates.

i. *Scheffler has admitted that he did not voluntarily disclose to the Government the information on which the untrue allegations in this claim are based prior to a public disclosure under subsection (e)(4)(a).*

Although his lawyer deleted it from his amended complaint, Scheffler stated in his initial pro se complaint that after Whalen approached him, he did not voluntarily disclose to the Government the information on which his untrue allegations herein are based. Rather, the first thing he did was to start a "public pressure campaign[.]" Dkt. 1, ¶ 44. Then, he contacted the City Administrator for Morrison County; he spoke at a BPOU of the Morrison County Republican Party; he called a police officer, who he now insinuates is corrupt; he spoke with news media outlet Action 4 Liberty; Action 4 Liberty published a story about this issue the same day (on June 25, 2025); and he spoke with the BPOU from Mille Lacs County. Dkt. 1, ¶¶ 44, 45, 48, 52, 57, 58, 59, 60. At a Mille Lacs County BPOU meeting on July 7, 2025, Scheffler "shared his experience and proofs of the Golden Shovel fraud." *Id.* at ¶ 64.

On July 10, 2025, three days after that BPOU meeting on July 7, 2025, Scheffler filed a complaint in this matter pro se. He did not voluntarily disclose to the Government the information on which the allegations herein are brought prior to the *many* public disclosures noted above, and did not disclose the information to the Government before June 25, 2025, the day on which Action 4 Liberty issued its news article. Scheffler confirmed that only "at or about the same time" as when he filed the complaint on July 10, 2025, "a copy of the Complaint, any Sealing Order, and Relator's disclosure of evidence will be served on the Department of Justice and the United States Attorney for the District in which this matter has been filed." Dkt. 1, ¶ 4 ("III. Compliance with Requirements of Suit"). He swore that they "will be served," not that they *had* been.

Under this framework Scheffler would never constitute an original source of the information, which is why dismissal should be with prejudice.

ii. *Scheffler does not have knowledge that is independent of and materially adds to the publicly disclosed allegations, and, even if he does, he did not voluntarily provide the information to the Government before filing an action under this section.*

Scheffler has also admitted he is not an original source of the information under the framework that he "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and . . . has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). There are two components to this, each addressed below, and Scheffler needs *both* for his claim to proceed.

The first component is that Scheffler must have knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions. According to Scheffler, during his "public pressure campaign," he provided what he considered to be "proofs" of wrongdoing to Action 4 Liberty and to the Mille Lacs County BPOU. *See* Dkt. 1, ¶ 57, 64. It was his own conversation with Action 4 Liberty on June 25, 2025, that led to the issuance of the news media article *by* Action 4 Liberty on the same day. *See id.* at ¶ 57, 58. Scheffler has nothing that is both independent of *and* would materially add to the public disclosure by Action 4 Liberty because he was the source of the bad information disclosed by Action 4 Liberty.

The second component is that Scheffler must have voluntarily provided the information to the Government *before* filing an action under this section. So, even if Scheffler *has* more information than he told the news media organization Action 4 Liberty as component of his self-described "public pressure campaign," he *still* cannot be considered an "original source of the information" because he did not voluntarily provide the information to the Government *before* filing the instant action. He admitted as much in his initial filing. His filing is dated July 10, 2025, and in it he stated that "Relator's disclosure of evidence *will be* served on the Department of Justice and the United States Attorney for the district in which this matter has been filed." Dkt. 1, ¶ 4 (emphasis added). It does not say that the evidence *had* been provided *before* filing the action.

As with the framework addressed in section (ii), above, Scheffler would never constitute an original source of the information as contemplated by 31 U.S.C. § 3730(e)(4)(B).

## CONCLUSION

There is no claim on which relief can be granted. This matter is improperly before the Court, and—regardless the falsity of the allegations—it is brought by an improper alleged relator. For the reasons above, Defendant requests the Court dismiss this matter pursuant to Fed. R. Civ. Pro. 12(b)(6).

Respectfully submitted,

**WILSON & CLAS**

Dated: 11/4/2025

/s/ Andrew C. Wilson
Andrew C. Wilson
Attorney ID No.: 398583
Attorney for Defendant Golden Shovel, LLC
Wilson & Clas
201 Sixth Street Southeast, Suite 210
Minneapolis, MN 55414
(612) 910-2104
awilson@wilsoncd.com